IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**JOHN S. WILLIAMS, PAUL F. REEVES,
ERIK S. GRAVES, and TAMMY D. DAY,**
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.                                                       Case No.: 3:09cv225/MCR/MD

**BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC.,**

    Defendant.
_____/

**O R D E R**

    This action is brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), for breach of fiduciary duty and declaratory and injunctive relief (doc. 13). Before the court is the plaintiffs' Motion to Certify a Class of Cancer Patients Who Were Denied Radiology Benefits Known as Diagnostic CT and Supporting Memorandum of Law (doc. 83). The defendant, Blue Cross and Blue Shield of Florida, Inc. ("BCBSF"), responded in opposition (doc. 92), and the plaintiffs filed a reply to BCBSF's response (doc. 121). Having considered the parties' positions, the court finds that the named plaintiffs lack standing to assert the claims in their Second Amended Complaint ("Complaint") and thus that their motion should be denied and their Complaint dismissed.

**BACKGROUND**

    The named plaintiffs, all of whom are BCBSF insureds, were diagnosed with cancer and underwent fusion PET/CT scans at Angel Williams Imaging Center ("AWIC") in Pensacola, Florida, for additional diagnostic purposes. According to the Complaint ("Complaint"), a fusion PET/CT scan is performed by a single machine that combines

images obtained through positron emission tomography ("PET"), which depicts the body's metabolic or chemical activity, and computed tomography ("CT"), which depicts the body's anatomical structures, allowing the interpreting physician to detect "metabolic changes in the proper anatomical context of the patient's body." *See* doc. 13 at ¶¶ 37-38, 40. As the plaintiffs explain in their Complaint, although fusion PET/CT consists of one scan, it produces three different images – one through PET, one through CT, and one that is a combination or overlap of the two.[1] *See* doc. 13 at ¶¶ 37-39. According to the plaintiffs, fusion PET/CT is the most effective tool to distinguish benign from malignant disease, determine the extent of disease, detect residual and recurrent tumors, and monitor therapy, providing increased accuracy over the former approach of performing PET and CT scans separately and subjecting patients to less radiation. *See* doc. 13 at ¶¶ 6, 8. The plaintiffs also contend that the CT portion of the scan must be interpreted separately from the fused PET/CT to avoid false interpretations and thus incorrect diagnoses. *See* doc. 13 at ¶ 53.

BCBSF did not deny coverage for any of the named plaintiffs' PET/CT scans. In fact, with respect to each of the named plaintiffs, BCBSF initially reimbursed AWIC separately for the PET/CT scan and CT scan. After it discovered through a post-claims audit that the PET/CT scan and CT scan were performed in a single procedure, however, BCBSF recouped payment from AWIC for the CT scan.[2] The plaintiffs claim that, in doing so, BCBSF breached its fiduciary duty to them. Even though none of the named plaintiffs

---

[1] The record reflects that, during all pertinent times, when a fusion PET/CT scan was performed, AWIC billed for both a PET/CT scan and a CT scan. Accordingly, in connection with the PET/CT scans performed on the named plaintiffs, AWIC billed BCBSF for both a PET/CT scan and a CT scan.

[2] According to the affidavit of Regina Williams, a supervisor in BCBSF's Overpayment Recovery Unit, BCBSF recoups from participating providers overpayments identified by BCBSF's Healthcare Provider Audit Department ("HPAD"). Once the HPAD identifies an overpayment, it sends the provider a notice of intent to recover the overpayment, identifying the claim that was overpaid, the reason BCBSF considers the claim to have been overpaid, and the amount of overpayment BCBSF intends to recover. If the provider fails to successfully contest the recoupment within the time allowed or voluntarily return the payment, BCBSF recovers the overpaid amount by deducting it from future claim payments pursuant to its agreement with the provider. Williams testified that, on July 25, 2008, BCBSF sent a notice of intent to recover $129,550.89 in overpayments from Dr. Angel Williamson, the owner of AWIC, stemming primarily from AWIC's billing of CT scans concomitantly with PET/CT scans. The $129,550.89 in overpayments included claims submitted on behalf of 79 patients. BCBSF recovered overpayments on claims submitted on behalf of only 37 patients before halting its recovery efforts due to AWIC's Demand for Arbitration stemming from BCBSF's July 25, 2008, notice of intent to recover overpayments.

paid out-of-pocket for any portion of the fusion PET/CT scan,[3] the plaintiffs seek to recover the amount recouped from AWIC for the CT scan under 29 U.S.C. § 1132(a)(1)(B).[4] They also seek declaratory and injunctive relief under 29 U.S.C. § 1132(a)(3)[5] and to certify the following class action:

> All individuals insured under an ERISA-governed health insurance policy with Blue Cross and Blue Shield of Florida ("BCBSF") who received denials of provider-requested diagnostic CT (CPT codes 71250, 74150, 70450, 70490, 72192) when fusion PET/CT (CPT codes 78815, 78816) was concomitantly requested and approved, pursuant to the July 25, 2008 audit advanced by BCBSF against Angel Williamson

---

[3] As Michelle Shipley, BCBSF's Senior Manager of Provider Contracting, explained in her affidavit, BCBSF entered into contracts with AWIC pursuant to which AWIC was to render medical services to BCBSF's members at certain agreed upon rates. AWIC was precluded under the agreements from billing or otherwise seeking any type of recourse against any BCBSF member for covered services and, instead, was to look solely to BCBSF for payment. The record reflects that, contrary to its agreements with BCBSF, AWIC sent a letter to the named plaintiffs on or about March 4, 2009, informing them that BCBSF had denied payment for services provided to them, requesting payment from them, and encouraging them to meet with AWIC's counsel, which is now representing them in this matter, for a free consultation to discuss a possible appeal of BCBSF's decision. Although AWIC requested payment, it did not include any bill or invoice with its letter or otherwise specify any amount allegedly owed. Moreover, the record reflects that AWIC never recovered any payment from the named plaintiffs or any of its other patients for the CT scans and has no intention of doing so. Indeed, although Dr. Williamson is not a party to this lawsuit, plaintiffs' counsel states in the plaintiffs' reply brief that Dr. Williamson "would be remiss . . . if it was not pointed out that her office never actually recovered any payments for unpaid diagnostic CT benefits from any of her patients, including the named Plaintiffs, by sending invoices or by other means, and her office no longer engages in the billing practices in question." While the court is perplexed by counsel's statement, particularly considering that Dr. Williamson is not a party to this action, the statement indicates to the court that AWIC has no intention of recovering any payment from the named plaintiffs. The court additionally notes there is no evidence in the record that AWIC ever made any further effort to collect any outstanding amounts from the named plaintiffs, much less turned the matter over to a collections agency.

[4] A participant or beneficiary in an ERISA plan may bring suit under § 1132(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[5] Under § 1132(a)(3), an ERISA participant or beneficiary may sue "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) enforce any provisions of this subchapter or the terms of the plan." In their Complaint, the plaintiffs request that the court enjoin BCBSF "from committing these financially-motivated acts in the future and/or declar[e] their invalidity . . . ." *See* doc. 13 at ¶ 105.

Imaging Center, P.A. ("AWIC").[6]

In response to plaintiffs' motion to certify, BCBSF asserts, among other things, that the named plaintiffs lack standing to bring the causes of action alleged in their Complaint. The court agrees.

**DISCUSSION**

It is well-settled in the Eleventh Circuit that "'any analysis of class certification must begin with the issue of standing.'" *Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987), *cert. denied*, 486 U.S. 1005 (1988)). Indeed, "[f]ederal courts . . . have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). As a result, "prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Bush*, 221 F.3d at 1279. "'Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.'" *Id.* (quoting *Griffin*, 823 F.2d at 1282). "At an 'irreducible constitutional minimum' Article III standing requires that the plaintiff 'must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Connecticut v. Health Net, Inc.*, 383 F.3d 1258, 1261 (11th Cir. 2004), *cert. denied*, 543 U.S. 1149 (2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).[7] In other words, in evaluating a plaintiff's standing, the court must determine

---

[6] The description of denied benefits is broader in the plaintiffs' Complaint and includes, in addition to diagnostic CT scans performed in conjunction with PET/CT scans, fusion PET/CT scans, administration of a radioactive pharmaceutical in connection with PET/CT scans, and office consultation with the interpreting physician. (*See* doc. 13 at ¶ 95). Although the class the plaintiffs seek to certify includes only an alleged denial of diagnostic CT scans, there is no indication that the plaintiffs were denied any of the other benefits; as a result, the court's analysis applies equally to all the benefits referenced in the Complaint.

[7] According to *Lujan,* to establish that an injury is particularized, the plaintiff must establish that it effected him in a personal and individual way. *Lujan,* 504 U.S. at 561 fn.1.

whether he has "'alleged 'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "Generally, a plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth*, 422 U.S. at 499). Bringing suit in the form of a class action does not abrogate the individualized standing requirement. *See Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 fn.6 (11th Cir. 2000). "Without a plaintiff's satisfaction and demonstration of the requirements of Article III standing, a federal court has no subject matter jurisdiction to hear the merits of a plaintiff's – or, in this case, the class plaintiffs' – claim." *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). When the court lacks jurisdiction, its only function is to announce that fact and dismiss the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

The plaintiffs' motion for class certification is woefully inadequate for a number of reasons, only one of which needs to be addressed here. As BCBSF observes, none of the named plaintiffs suffered any injury as a result of the acts alleged in their Complaint. Indeed, not only did each of the named plaintiffs receive a diagnostic CT scan in conjunction with a fusion PET/CT scan, but none of them have been required to pay for the separately billed CT scan. Rather, as previously discussed, AWIC is precluded under its agreements with BCBSF from collecting payment from any of the named plaintiffs, and its counsel has confirmed that it has no intention of doing so. Having received the diagnostic CT scan and having no financial responsibility for it, the named plaintiffs have not been injured by BCBSF's alleged actions and thus lack standing to assert the breach of fiduciary duty claim alleged in their Complaint. *See Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1222 (11th Cir. 2008) (noting that "ERISA allows the recovery of benefits, but it does not allow suits for extracontractual damages"); *see also Weaver v. BCBSF Life Ins. Co.*, 370 Fed. Appx. 822, 823 (9th Cir. 2010) (concluding that the plaintiff suffered no injury-in-fact, as required to support standing, where she failed to show that she did not receive the

benefit of her policy) (unpublished op.);[8] *Romberio v. Unumprovident Corp.*, 2009 WL 87510, at *6 (6th Cir. Jan. 12, 2009) (unpublished op.) (holding that, "[t]o prevail on a breach-of-fiduciary-duty claim under ERISA, a plaintiff must generally prove that the defendant not only breached its fiduciary duty but also caused harm by that breach"); *Nahigian v. Leonard*, 233 F. Supp. 2d 151, 168 (D. Mass. 2002) (finding that, "[b]ecause ERISA is concerned primarily with ensuring that employees receive benefits due to them, an employee usually cannot recover under ERISA – even if there has been a breach of fiduciary duty – unless the breach caused some reduction in her benefits"); Allstate *Indem. Co. v. Forth*, 204 S.W.3d 795, 796 (Tex. 2006) (finding that the plaintiff, who sued her former insurance company for settling her medical bills in an arbitrary and unreasonable manner, suffered no injury and therefore lacked standing to bring a breach of contract claim against her former insurer where she was not denied medical treatment and had no unreimbursed, out-of-pocket medical expenses).

In addition to lacking standing to assert the breach of fiduciary duty claim alleged in their Complaint, the plaintiffs have no standing to assert a claim under § 1132(a)(3) for declaratory and injunctive relief. As the Eleventh Circuit has noted, "[a] plaintiff has standing to seek declaratory or injunctive relief only when he 'allege[s] facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Bowen*, 233 F.3d at 1340 (quoting *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1346-47 (11th Cir. 1999), *cert. denied*, 529 U.S. 1055 (2000)). "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute an injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).[9] The

---

[8] While unpublished opinions are not considered binding, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000).

[9] The court recognizes that some circuits, including the Second and Third Circuits, have held that plaintiffs need not demonstrate actual harm to have standing to seek injunctive relief under ERISA pertaining to the disclosure and fiduciary responsibilities imposed on plan administrators. *See, e.g., Central States*, 433 F.3d at 199; *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003). In both *Central States* and *Hovarth*, however, the plaintiffs' claims for injunctive relief were brought on behalf of plans and pertained to ERISA's statutory disclosure and reporting requirements, as well as allegations of self-dealing in *Central States*, rather than to benefits decisions, as in this case, which affect only certain individuals and not the plans in general. In fact, BCBSF's refusal to reimburse AWIC separately for the CT scans not only

purpose of the "injury-in-fact" requirement is to "reserv[e] limited judicial resources for individuals who face immediate, tangible harm absent the grant of declaratory or injunctive relief." *Bowen*, 233 F.3d at 1340. The named plaintiffs – and putative class members, for that matter – plainly do not fit in that category. In their Complaint, the plaintiffs allege only that BCBSF's failure to reimburse for a separately billed CT scan "is an ongoing problem that will continue to cause the Named Plaintiffs and members of the class injury and/or economic loss." *See* doc. 13 at ¶¶ 78, 104. They do not allege any impending need for such services and, as discussed above, even if they did, they have not demonstrated any action by BCBSF that could result in injury or economic loss to them.[10] The court thus finds that the plaintiffs' motion for class certification should be denied and their Complaint dismissed.[11] *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (noting that, "[f]or a district court to certify a class action, the named plaintiffs must have standing") (internal quotations omitted).[12]

---

resulted in no harm to the named plaintiffs, but it inured to the benefit of the plans. Notably, the Eighth Circuit has held that a direct injury must be established even when bringing a claim for injunctive relief on behalf of a plan. *See Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901, 906-07 (8th Cir. 2002), *cert denied*, 537 U.S. 1106 (2003).

[10] Not only have the named plaintiffs suffered no injury as a result of the acts alleged in their Complaint, but one of them – John Williams – is not even a member of an ERISA plan and thus does not fit the definition of the proposed class.

[11] Because the named plaintiffs have no standing to assert the causes of action alleged in their Complaint, the court has no jurisdiction over the matter and must dismiss their Complaint. *See Jenkins v. Lennar Corp.*, 216 Fed. Appx. 920, 921 (11th Cir. 2007) (noting that, "when the district court lacks subject-matter jurisdiction, it should dismiss the complaint '*sua sponte* if necessary, pursuant to Fed. R. Civ. P. 12(h)(3)' instead of [deciding] the merits") (unpublished op.); *see also Steel Co.*, 523 U.S. at 94, and *Central States*, 433 F.3d at 198.

[12] To the extent anyone has been injured by BCBSF's failure to pay for the separately billed CT scans, it appears to be AWIC. Indeed, it is clear that the real controversy here stems from billing issues between AWIC and BCBSF and that AWIC is the only proper party to assert the causes of action alleged in the plaintiffs' complaint. The same day AWIC wrote the named plaintiffs regarding BCBSF's refusal to reimburse separately for the CT scans, AWIC sent BCBSF a demand for arbitration seeking to recover the recouped payments pursuant to the dispute resolution process set forth in the parties' agreements. For reasons not included in the record, AWIC decided not to pursue its claim against BCBSF, at least not directly. In a related case also filed in this court and assigned to the undersigned, however, AWIC sued Aetna Life Insurance Company to recover amounts not reimbursed for CT scans billed concomitantly with fusion PET/CT scans. AWIC settled that lawsuit, but specifically excluded from the settlement claims submitted on behalf of several patients who later filed a lawsuit nearly identical to this one. The court concluded in that case, for the same

Case No. 3:09cv225/MCR/MD

Accordingly, it is hereby ORDERED that plaintiffs' motion for class certification (doc. 83) is DENIED and their Complaint (doc. 13) is DISMISSED with prejudice.[13] The Clerk of Court is directed to enter judgment in favor of BCBSF consistent with this order and to tax costs against the plaintiffs.

**DONE and ORDERED** this 12th day of October, 2010.

           s/ *M. Casey Rodgers*
           **M. CASEY RODGERS**
           **UNITED STATES DISTRICT JUDGE**

---

reasons set forth herein, that the plaintiffs lacked standing to assert the causes of action alleged in their Complaint. The fact that the plaintiffs in this matter lack standing to assert the causes of action alleged in their Complaint is reinforced by plaintiffs' counsel's confirmation in the plaintiffs' reply brief that the plaintiffs have not themselves paid any amount for the CT scans.

[13] Having found that the named plaintiffs lack standing to assert the causes of action alleged in their Complaint, the court need not address the requirements of Fed. R. Civ. P. 23(a) for class certification. The court would note, however, that the named plaintiffs failed to satisfy the element of numerosity. Based on the billing records of AWIC and BCBSF's July 25, 2008, letter to AWIC regarding the results of its claims audit, the named plaintiffs insist there are either 138 or 139 putative class members. As Williams explains in her affidavit, however, the audit included 138 *claims* submitted on behalf of 79 *patients*. And BCBSF recouped funds for services provided to only 37 of those patients, including the four named plaintiffs. Moreover, according to the affidavit of Sylvia Dornes, a senior legal affairs consultant for BCBSF, of those 37 patients, only 19 were members of an ERISA plan. As a result, based on the record, it appears there are only 19 putative class members, which is insufficient under Rule 23(a). *See, e.g., Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986), *cert. denied*, 479 U.S. 883 (1986) (noting the general rule that twenty or fewer class members is inadequate under Rule 23(a)); *County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010) (same). Although the named plaintiffs dispute BCBSF's summary of the audit report, insisting it includes 139 *patients*, they have not demonstrated that fact and the court's review of the audit report is consistent with BCBSF's summary. The named plaintiffs likewise have offered no support for their position that, for purposes of determining whether they have established the requisite numerosity, the court should consider all individuals whose claims were offset by BCBSF in connection with reimbursement for overpayments made for the CT scans at issue in this case. As a result, any inference of numerosity above the 19 members identified by BCBSF would constitute sheer – and impermissible – speculation by the court. *See Vega*, 564 F.3d at 1267.